# BERL *v.* DULANY.

------

## EQUITY; EQUITABLE LIENS.

No equitable lien upon lands, for the payment of notes executed by the owner for loans made to him, will be decreed upon the ground that the borrower promised to execute a trust deed to secure payment of

the notes, where the original loan was upon the borrower's unsecured notes, and the lender, after subsequently requesting the execution of the trust deed and receiving the reply that its execution must be delayed, accepted notes of a third person as collateral, and still later made an additional loan accepting like collateral, and where the borrower, though indulging the lender's expressed hope to obtain the further security of a trust deed, made no certain promise to execute one.

No. 2608.  Submitted February 6, 1914.  Decided April 6, 1914.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia dismissing his bill filed to establish an equitable lien upon certain real estate of the bankrupt which had passed into the custody and control of his trustee in bankruptcy.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree dismissing the bill of William Berl filed June 16, 1905, against H. Rozier Dulany, trustee of the estate of Thomas E. Waggaman, bankrupt.

The bill alleges that plaintiff is the owner of two notes executed by Thomas E. Waggaman.  The first is for $19,000, executed January 15, 1903, payable to plaintiff one year after date with interest at 6 per cent per annum, payable quarterly. The second is for $1,000, executed April 15, 1903, payable in one year with interest as aforesaid.

That at the time of making the loans aforesaid, Thomas E. Waggaman was seised and possessed of a tract of land in the District of Columbia known as the subdivided portion of Cleveland park, according to a plat recorded in the office of the District Surveyor.

"That the aforesaid loans were made by the complainant to the said Waggaman, upon his express undertaking and agreement that they would be further secured by a deposit with him, said complainant, of twenty certain promissory notes of one Maggie F. Riley for $1,000 each, which should, in turn, be secured by a deed of trust upon the said tract of land, and com-

plainant, upon the faith and credit of said promise, and upon the full belief that said deed of trust had in fact been executed and placed of record, being at the time and ever since a non-resident of the District of Columbia, and relying upon the good faith and promises of the said Waggaman, advanced to him the full sum of $20,000 as aforesaid. That in accordance with the terms of said agreement, the said twenty notes of said Maggie F. Riley were to be deposited with him as collateral security, nineteen for the said note of which Exhibit No. 1 is a copy, and one for the note of which Exhibit No. 2 is a copy, and the said twenty notes were in fact delivered to complainant by the said Waggaman as recited in said Exhibit No. 1 and Exhibit No. 2. Said twenty are for the sum of $1,000 each; bear date the 24th day of December, A. D. 1902, and are payable three years after date to the order of one Samuel E. Allen, Jr., with interest payable quarterly at the rate of 5 per cent per annum; are signed by said Maggie F. Riley and indorsed to complainant by said Samuel E. Allen, Jr. A true copy of one of said notes is hereto attached marked "Exhibit No. 3," and is prayed to be read and considered as a part hereof. Each of the other nineteen of said notes is identical in form and terms with the one of which said Exhibit No. 3 is a copy."

That plaintiff is informed and believes that said deed of trust was actually prepared, but was not placed of record, and has been lost.

That the facts and circumstances, the agreements and recitals in the said notes and the letters of Waggaman, constitute a lien upon all the interest of said Waggaman.

The prayers are that a lien be declared and foreclosed upon all the interest of said Waggaman in the land aforesaid, and that the same be sold for the satisfaction of plaintiff's demand. The answer put the plaintiff upon proof of the allegations of his bill.

The evidence shows that for many years Thomas E. Waggaman had been dealing in real estate. He was considered to be a man of large means, and for years enjoyed the confidence of the community. He was considered perfectly solvent until just

prior to September 26, 1904, on which date he was adjudged to
be a bankrupt; and the defendant Rozier Dulany was appointed
trustee of the bankrupt's estate, into the possession of which he
immediately entered.

About the year 1890, to accommodate many persons desiring
to invest money for savings account, Waggaman began to re-
ceive money from such persons in sums generally small. He set
aside certain notes secured on real estate in what he called list
No. 1. Investors were given notes signed by one of Waggaman's
clerks for sums deposited, said notes reciting that they were
secured on list No. 1. Larger sums began to be received.
When notes issued on list No. 1 equaled the amount of those in
the list, other lists were made and the same plan pursued.
These lists increased to thirty-seven in number.

In January, 1895, the lists were consolidated into one, known
thereafter as list No. 1. His supply of notes secured by mort-
gage was exhausted. He was engaged in developing suburban
properties, among them, Cleveland park. As stated by his
confidential clerk, who had charge of the listed notes and the
issuing of the investment notes thereon: "He conceived the
idea that his suburban properties were worth what he had
paid for them plus whatever sums he had spent, at different
times, in their development, and that a note of one of his
clerks for the amount of such expenditures, having on it a mar-
ginal notation that it was secured on a particular piece of prop-
erty, without a deed of trust, or its equivalent, was good se-
curity for list No. 1. Mr. Waggaman's expenditures on ac-
count of these outside properties were very considerable, and
he had to have more money than he had then invested in the
several properties. His idea was that the properties, by reason
of his spending money on them and the general improvement
in country property, had increased in value. Then he had one
or the other of his clerks draw a note to the order of H. P.
Waggaman, procure his indorsement thereon, write on the
margin that it was secured on H. P. Waggaman's personal note,
and put that note in list No. 1 as the basis of security for notes

issued against it.  \*  \*  \*  Sometimes he would have a note of one of his clerks drawn for a large amount, largely in excess of what he had paid on account of a purchase, writing on the margin that it was secured on one or another of his outside properties, and put that in list No. 1, as a basis of security." Every Monday morning the clerk made a statement on a pad showing Mr. Waggaman how the list stood, "that is, whether or not the notes in the list were equal to or exceeded notes of the clerks issued against it. When clerks' notes outstanding exceeded notes in the list, Mr. Waggaman would direct witness to have one of his clerks sign another note or notes, in sums varying from ten to fifty thousand dollars, write on the margin on what particular piece of property it was secured, and put that in list No. 1 as collateral. Notes issued to lenders were always signed by one or the other of his clerks, and each note stated, after the lists were consolidated in 1895, that it was secured on list No. 1."

H. P. Waggaman was a man of no financial responsibility at all, and was indebted in a large amount to Thos. E. Waggaman.

The clerks were without means; they received no part of the money for which the investment notes were executed to lenders. The money received went to Waggaman's account in the bank, and he paid the quarterly interest on the notes with his personal check to the depositors. "When list No. 1 came into existence there were actually some deed of trust notes in it, but in course of time these were almost entirely eliminated, and it came to consist almost entirely of notes made by Mr. Waggaman's clerks.  \*  \*  \*  Such money as came to Waggaman's office for investment during the last eight or ten years of his business life, and was not invested on list No. 1, was usually put on some of his property by deed of trust, but witness does not know what proportion of the money went that way." Six notes placed in list No. 1 were shown. These were signed by clerks in the office, represented moneys spent in improvement or purchase of Cleveland park, and all noted on the margin as secured on Green Purchase, or Cleveland park.

Cleveland park was purchased of Green, and the subdivided part thereof was covered by a mortgage to secure the purchase money. The trustee's books show sales of this subdivision amounting to $128,325.79,—subtracting therefrom amounts paid in discharging the purchase money mortgage, taxes, etc., there remained $42,859.53.

Plaintiff, Berl, was a brother-in-law of Thomas E. Waggaman, and resided in Delaware, where he was engaged in business as a manufacturer. He had lent money to Waggaman and in 1902 held his unsecured note for $13,000. When the loan was first made does not appear. The correspondence relied on to establish the equitable lien begins with an undated letter evidently written before December 23, 1902. This says: "I will be very glad to let you have the mortgage you speak of on Cleveland park, but do not know when I will be able to fix it, as the syndicate have to pass on it. Will try to hurry them up."

No trust deed was executed. The next letter reads as follows:

Washington, D. C., Dec. 23, 1902.

My Dear Berl,—

I am preparing the papers for the trust I told you about on Cleveland park. For convenience, the notes are made for $1,000 cash, to the amount of $259,000. Before this trust of $259,000 is one for the purchose of the property, which will be liquidated when 500,000 sq. feet of the tract have been sold; so I really regard the trust of $259,000 as a first trust. The amount that is put on the lots is $19\frac{3}{4}$ cents per sq. ft.; as the ground is selling for 35 and 40 cents, I consider it ample security.

The notes are made for three years; but as the property is sold I must take them up in order to release. I will make the following suggestion to you: That I will give you my personal note secured upon these, as collateral, for $1,000 each, to the amount that you desire. It is to bear 6 per cent interest, and I am to have the privilege, as I said before, of taking up the collaterals as the ground is sold, and to replace them by others of

the same amount, with the same security. Now, if this does not meet with your idea, let me know what you want.

Very sincerely yours,

Thomas E. Waggaman.

Another letter of W. G. Waggaman to plaintiff, dated December 26, 1902, relates chiefly to stock in a gold mining company, but adds: "The trust on Cleveland park will be completed in a few days, so let Thomas E. know how much you want. As you may want to use your investment as collateral, I would suggest that you ask Thomas E. to give you only such notes as are secured on the subdivided portion of the park, but do not mention me as the suggestor."

On January 15, 1903, plaintiff loaned more money to Waggaman, amounting, with the former indebtedness, to $19,000. January 15, 1903, the note for $19,000 was mailed to plaintiff with a letter in which it was said: "The nineteen collateral notes are secured by the subdivided portion of Cleveland park." The note inclosed reads as follows:

Washington, D. C., January 15th, 1903.

$19,000.xx.

One year after date I promise to pay to the order of William Berl nineteen thousand xx/100 dollars for value received, with interest, payable quarterly at the rate of 6 per centum per annum until paid, principal and interest payable at the office of Thos. E. Waggaman, Washington, D. C.

As collateral security, I have deposited with said William Berl nineteen notes of $1,000 each, and designated (A); dated December 24th, 1902, signed by Maggie F. Riley, and secured by subdivided portion of Cleveland park; and in case this note or any instalment of interest thereon shall not be paid at maturity, I hereby give the said William Berl or any person to whom this note and collateral may be transferred, full authority to sell the above-described collateral, or any part thereof, immediately on the maturity of said note, or at any time thereafter, at public or private sale, in his discretion, without advertising

the same or giving me any notice, and after the payment of any cost or expense of such sale, to apply so much of the proceeds of said collateral to the payment of this note and interest as may be necessary, and the remainder of said proceeds of sale, if any, to account for to me. In case the proceeds of said sale shall not cover the principal and interest of this note, and the expenses of sale, I hold myself bound to pay any such deficiency to said William Berl, or to any other person or persons to whom this note and collateral may be transferred.

                                    Thos. E. Waggaman.

An account accompanied the note showing amount due Berl of $19,000, balanced by the note.

The following is attached to the account:

"Memo.—Nineteen notes secured by subdivided portion of Cleveland park are attached to the note for $19,000."

April 20, 1903, another note for $1,000 was sent to plaintiff, dated April 15, 1903, together with another of the $1,000 collateral notes, for which plaintiff remitted $1,000. These collateral notes were dated December 24, 1902, payable three years after date, for $1,000 each, to order of Samuel E. Allen, Jr., and signed by Maggie F. Riley; both clerks of Waggaman. They were indorsed by Allen to the order of William Berl. A letter of January 10, 1904, written to plaintiff by W. G. Waggaman, wishing to extend the $19,000 note to April 15,—the maturity of the second note,—expresses the hope that the spring demand for land in Cleveland park will enable him, "if not to pay the notes, to give you a trust for a given number of feet at 19⅜."

Another letter of January 18, 1904, states: "There are 1,-200,000 sq. feet in the tract on which your notes are secured as a second trust; the first trust being about $61,000. He sees no reason why the first trust should not be paid with spring sales. "Then, should you want it, I can make up a trust for you which would be an individual first trust." Another letter of July 21, 1904, from W. G. Waggaman, says: "Thos. E. told me a few days ago that he could not at present give you a

first trust on Cleveland park. * * * Thos. E. is also trying to take up the first trust on Cleveland park, and will get a definite reply about it on August 1st. If the trust company which agreed to take up said trust does not back out, Thos. E. will leave out enough ground in the park for your trust." Another from the same to the same of August 13, 1904, says: "Thos. E. told me last night that he had requested Sherman to leave out of the new tract on Cleveland park 70,000 sq. feet of ground, for which he would give you a deed. Such an area in nearly any part of the park will be ample security for the amount due. If I am asked to choose the ground you will come out all right."

It does not appear that beyond the twenty $1,000 notes of Miss Riley, received by plaintiff as collateral, any more were executed by her. It is certain that the proposed mortgage for $259,000, referred to in the aforesaid letter of December 23, 1902, was never executed. The trustee testified that the assets of the bankrupt's estate would pay about 25 per cent of his general indebtedness. Part of the indebtedness consists of $195,327.92, received by Waggaman from investors between January 1, 1903, and July 22, 1904.

*Mr. W. W. Millan* and *Mr. R. E. L. Smith,* for the appellant.

*Mr. Samuel Maddox, Mr. H. Prescott Gatley,* and *Mr. Barry Mohun* for the appellee.

Mr. Chief Justice Shepard delivered the opinion of the Court:

In our opinion there was no error in dismissing the plaintiff's bill. It is apparent that the original loan by plaintiff to Waggaman was without security or promise of security.

When plaintiff first began to demand security does not appear. The undated letter of Waggaman to plaintiff, written some time prior to December 23, 1902, shows that a mortgage had been discussed, but does not amount to a certain promise that one would be executed. The letter of December 23, 1902, shows

that the idea of executing a special trust deed to secure plaintiff
had been abandoned. That letter indicated the intention to
place a second trust on Cleveland park for $259,000, represented
by notes for $1,000 each; and makes this offer: "I will give
you my personal note secured upon these as collateral, for $1,-
000 each, to the amount that you desire." This proposition was
accepted by plaintiff, and he received Waggaman's note there-
for dated January 15, 1903. This note recited that nineteen
notes of Maggie F. Riley, "secured by subdivided portion of
Cleveland park," were deposited with plaintiff as collateral,
with full power of sale of said collateral notes.

Subsequently, plaintiff lent Waggaman $1,000 more and
received his note with another one of the $1,000 col-
lateral notes. It would appear from the subsequent corre-
spondence recited above, that plaintiff wanted to have his loans
further secured by a special trust deed on the Cleveland park
tract, but it appears that Waggaman declined to do this,—see
letter of July 21, 1904. Subsequent letters indicate that he
was indulging the hope of plaintiff that he might give him a
deed of trust later, but there is no certain promise to do so.
There is nothing in the transactions of the parties that would
create an equitable lien upon any part of Cleveland park as
security for the loans of plaintiff evidenced by the two notes
of Waggaman. In lieu thereof the plaintiff finally accepted
the collateral notes of Maggie F. Riley as his sole security.
He thus abandoned or waived any claim, if such he in fact had,
to an equitable lien upon any part of Cleveland park as security
for his notes. It does not appear what has become of the twenty
collateral notes of Riley, which plaintiff was entitled to sell
upon default in payment of his notes. As the present owner-
ship of those notes does not appear, and no relief is prayed on
their account, it is unnecessary to inquire whether the state-
ments in the letter of December 23, 1902, or the recitals in
the note executed January 15, 1903, would create an equitable
lien for their security.

In the view that we have taken of the equitable rights of the
plaintiff, it is unnecessary to consider whether there is a suffi-

cient description of the property against which the lien is claimed, or whether there has been laches in its assertion, or what are the rights of subsequent creditors, or the effect of Waggaman's bankruptcy.

The decree is affirmed, with costs.                    *Affirmed.*

On May 12, 1914, a motion for a rehearing was denied.